UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

COLLEEN ANN HARRIS,

Petitioner,

v.

MOLLY HILL, Warden,

Respondent.

No. 2:18-cv-0359 KJM AC P

FINDINGS AND RECOMMENDATIONS

## I. Introduction

Petitioner is a state prisoner proceeding with counsel with a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, together with a motion to stay and abey this action pursuant to Rhines v. Weber, 544 U.S. 269 (2005). See ECF Nos. 1, 2. Petitioner paid the filing fee. At the direction of the court, see ECF No. 4, respondent filed a response to petitioner's motion, ECF No. 10, and petitioner filed a reply, ECF No. 13. This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the reasons that follow, the undersigned recommends that petitioner's motion to stay this action be granted.

## II. Background

In 2015, petitioner, who is in her seventies, was convicted in the El Dorado County Superior Court of the 2013 premeditated murder of her husband, Robert Harris, in violation of

Cal. Penal Code § 187; gun enhancements were found true, Cal. Penal Code §§ 12022.5(a), 12022.53 (b)-(d). On June 5, 2015, petitioner was sentenced to a prison term of 50 years to life. ECF No. 1 at 7. The Third District California Court of Appeal affirmed the judgment of the superior court by written order filed August 22, 2016.[1] See People v. Harris, Case No. C079470, 2016 WL 4434783, 2016 Cal. App. Unpub. LEXIS 6134. The California Supreme Court denied review on November 16, 2016.[2] See People v. Harris, Case No. S236910.[3]

On February 5, 2018, petitioner filed in the Third District California Court of Appeal a motion to recall the remittitur and to reinstate the appeal based on a change in state law governing sentence enhancements for firearm use. ECF No. 1 at 8. On April 23, 2018, the Court of Appeal denied petitioner's motion. See People v. Harris, 22 Cal. App. 5th 657 (3d Dist. Apr. 23, 2018, as modified Apr. 27, 2018). On June 5, 2018, petitioner filed a petition for review of that decision in the California Supreme Court (Case No. S249168), which remains pending as of this writing.

On February 13, 2018, petitioner filed a petition for writ of habeas corpus in the El Dorado County Superior Court, asserting six new and unexhausted claims (Case No. PC20180069). Petitioner has submitted a copy of the Superior Court's order filed April 16, 2018, extending the date for decision to at least July 16, 2018, under the California Rules of Court. See ECF No. 14 (Exhibit of State Judge Melikian's Order).

On February 14, 2018, petitioner filed the instant federal petition. ECF No. 1. The first four claims for relief, which petitioner avers were exhausted on direct appeal, are briefly supported by points and authorities. Id. at 2-3, 34-39.[4] The petition also identifies six additional

---

[1] Petitioner's counsel misstates the filing date of the Court of Appeal opinion. See ECF No. 1 at 7 ("April 28, 2011").

[2] Petitioner's counsel also misstates the filing date of the Supreme Court opinion. See ECF No. 1 at 8 ("September 22, 2016").

[3] This information is set forth in the Case Information website operated by the California Supreme Court. See http://appellatecases.courtinfo.ca.gov/search This court may take judicial notice of its own records and the records of other courts. See United States v. Howard, 381 F.3d 873, 876 n.1 (9th Cir. 2004); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980); see also Fed. R. Evid. 201 (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned).

[4] Claim One alleges that petitioner's due process rights were violated by admission of evidence regarding her previous acquittal for another homicide, and related ineffective assistance of counsel. Claim Two alleges ineffective assistance of counsel regarding the examination of a

claims that petitioner identifies as unexhausted. Id. at 10-11.[5] The petition states that these claims are now pending in the El Dorado County Superior Court. Petitioner's motion to stay and abey this action is premised on the pendency of the El Dorado County habeas petition, as well as the motion to recall the remittitur which is now pending in the California Supreme Court. See ECF No. 2 at 1. Petitioner explains:

> In the interest of judicial economy, to avoid piecemeal litigation, and for the reasons expressed below, petitioner respectfully requests this court to hold the federal habeas petition, being filed contemporaneously with this application, in abeyance while [s]he litigates potentially dispositive issues in this last stage of state collateral proceedings. . . . A successful resolution of any of these claims in state court will render moot further proceedings on this petition.[6]

Id. at 1-2. Petitioner contends her motion meets the requirements for a stay under Rhines. See ECF No. 2 at 3-7.

Respondent opposes petitioner's motion on grounds that the petition does not "contain" petitioner's unexhausted claims and is therefore not a "mixed" petition qualifying for a stay and abeyance under Rhines; petitioner's unexhausted claims are without merit; petitioner has failed to demonstrate good cause for failing to earlier exhaust her unexhausted claims; and petitioner has made no showing of diligence. See ECF No. 10.

## III. Petitioner's Motion to Stay and Abey This Action Under Rhines

### A. Legal Standards

A Rhines stay permits a prisoner seeking state postconviction relief to avoid expiration of AEDPA's one-year statute of limitations while he exhausts additional claims in the state courts "by filing a 'protective' petition in federal court and asking the federal court to stay and abey the

---

witness (the decedent's daughter). Claim Three alleges ineffective assistance of counsel regarding prejudicial statements made by counsel. Claim Four alleges prosecutorial misconduct in the form of improper and prejudicial argument, and related ineffective assistance of counsel. Id.

[5] Claims Five through Eight allege additional instances of ineffective assistance of counsel. Claim Nine alleges an invalid waiver, and Claim 10 asserts cumulative error. Id. These claims are discussed in greater detail infra.

[6] Although recall of the remittitur may moot these proceedings, only petitioner's pending state habeas petition is directly relevant to the instant stay request.

federal habeas proceedings until state remedies are exhausted." Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005) (citing Rhines, 544 U.S. at 278). By preserving the federal filing date, this process ultimately enables a petitioner to timely seek federal relief on all of her claims in a "perfected petition." Rhines at 271.

Under Rhines, a district court may stay a "mixed" federal habeas petition containing both exhausted and unexhausted claims upon demonstration of the following "limited circumstances": (1) there is "good cause" for petitioner's failure to previously exhaust her unexhausted claims in the state courts; (2) the unexhausted claims are potentially meritorious; and (3) petitioner has not engaged in intentionally dilatory litigation tactics. Rhines, 544 U.S. at 277-78.

**B. Analysis**

**1. "Mixed" Petition**

Respondent contends that petitioner's federal petition does not "contain" petitioner's unexhausted claims and is therefore not a "mixed" petition qualifying for a stay and abeyance under Rhines. Respondent asserts that the listing of Claims Five through Ten in the petition are "mere argument headings" which are "at most, notice pleading, not actual assertion of claims." ECF No. 10 at 1-2 (citing United States v. Quintero-Araujo, 343 F. Supp. 2d 935, 946 (D. Idaho 2004). Respondent argues that petitioner's motion to stay and abey, filed contemporaneously with the petition and providing a brief factual explanation for each unexhausted claim, "is not made part of the Petition, so the claims are not asserted *in* the Petition." ECF No. 10 at 1-2 (emphasis added). Respondent further asserts that the petition's "mere-belief-of-counsel swearing" by petitioner's counsel and lack of verification "by any person purporting to have personal knowledge of the facts" fails to meet the requirements of 28 U.S.C. § 1746 and Federal Rule of Evidence 602.

Petitioner's counsel responds that he filed a "basic form petition" identifying both exhausted and unexhausted claims to forestall the running of the statute of limitations, consistent with the Ninth Circuit's instructions in Waldron-Ramsey v. Pacholke, 556 F.3d 1008 (9th Cir. 2009). ECF No. 13 at 2-3. Petitioner explains that "[t]he motion to stay and abey had more detail of the unexhausted claims and between the detail of that motion and the form petition filed to

make the deadline for filing, the nature of those claims is clearly described." Id. at 3.

The court initially notes that the petition contains the verification of petitioner's counsel only, which attests to the truth of the matters therein and is signed under penalty of perjury. See ECF No. 1 at 13. Applicable rules require no more.[7] Nor does application of 28 U.S.C. § 1746 (written verifications) or Federal Rule of Evidence 602 (witness must have personal knowledge of the matter to which he testifies), although both are relevant in assessing good cause and delay under Rhines, as discussed below.

Rule 2, Federal Rules Governing Habeas Corpus Case Under Section 2254, requires that a habeas petition "state the facts supporting each ground" for relief. Id., Rule 2(c)(5). Here, although each exhausted and unexhausted claim are identified in the petition, only the motion to stay sets forth the specific supporting facts for each unexhausted claim.[8] Petitioner asserts that the petition is consistent with that endorsed in Waldron-Ramsey, in which the Ninth Circuit held that petitioner was not entitled to equitable tolling because he had not acted diligently. The Court of Appeals opined that petitioner could have timely filed a "basis form habeas petition" and later amended it, stating:

> [E]ven if Waldron-Ramsey may have faced some difficulty developing his claims without constant possession of all of his records . . . [i]f diligent, he could have prepared a basic form habeas petition and filed it to satisfy the AEDPA deadline, or at least could have filed it less than 340 days late assuming that some lateness could have been excused. . . . He could have developed that argument [his Faretta self-representation claim], outlined the other arguments and the facts underlying those arguments on the form habeas petition, and then sought to amend his petition when he got more information.

Waldron-Ramsey, 556 F.3d at 1014. Although this is what petitioner's counsel sought to accomplish in the instant case, utilization of an actual "form petition," with designated spaces for each claim and its supporting facts, would have been more precise and complete than the instant

---

[7] Rule 2, Federal Rules Governing Habeas Corpus Case Under Section 2254, provides that the habeas petition "must . . . be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242." Id., Rule 2(c)(5). The verification of the petition by petitioner's counsel meets these requirements.

[8] Cf. ECF No. 1 at 10-1 (petition) and ECF No. 2-1 at 2-4 (motion).

petition. Nevertheless, the court finds that the petition's comprehensive summary of relevant facts and case history applicable to all petitioner's claims, see ECF No. 1 at 15-31, provides adequate factual support for petitioner's unexhausted claims.

Respondent's reliance on Quintero-Araujo is misplaced. In that case, the district court denied petitioner's due process and ineffective assistance claims with leave to file an amended petition that expanded petitioner's factual allegations. The court found that "this notice-type pleading is not sufficient to satisfy the requirement of alleging facts sufficient to point to a real possibility of constitutional error." Quintero-Araujo, 343 F. Supp. 2d at 946. However, unlike the "protective" petition filed in the instant case, the petition filed in Quintero-Araujo was presented as the basis for a full substantive determination of petitioner's claims and necessarily required inclusion of all pertinent factual allegations. When the instant case is evaluated on the merits, it too will be based on a fully expanded and pled amended petition.

In sum, respondent has identified the need for future amendment of the petition but not the inadequacy of the present petition to support a stay. Petitioner has presented some claims that are exhausted and has identified the additional, unexhausted claims that she wishes to pursue upon completion of the exhaustion process. That is a sufficient basis to invoke Rhines. The court therefore overrules respondent's various objections and turns to the substance of the motion for stay and abeyance.

**2. Good Cause**

The "good cause" requirement under Rhines does not require a showing of "extraordinary circumstances." Jackson v. Roe, 425 F.3d 654, 662 (9th Cir. 2005). Rather, "[t]he good cause element is the equitable component of the Rhines test. It ensures that a stay and abeyance is available only to those petitioners who have a legitimate reason for failing to exhaust a claim in state court. As such, good cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify that failure." Blake v. Baker, 745 F.3d 977, 982 (9th Cir. 2014) (citing Pace, 544 U.S. at 416). "[T]he good cause standard . . . requires the petitioner to show that he was prevented from raising the claim, either by his own ignorance or confusion about the law or the status of his case, or by circumstances over which he had little or no

control[.]" Riner v. Crawford, 415 F. Supp. 2d 1207, 1211 (D. Nev. 2006).

Respondent contends, accurately, that petitioner's pro se status prior to retaining current counsel does not in itself provide good cause for failing to previously exhaust her new claims in the state courts. See Rose v. Lundy, 455 U.S. 509, 520 (1982) (exhaustion requirement applies equally to pro se litigants because "[j]ust as pro se petitioners have managed to use the federal habeas machinery, so too should they be able to master this straightforward exhaustion requirement"); but see Dixon v. Baker, 847 F.3d 714, 720-21 (9th Cir. 2017) ("A petitioner who is without counsel in state postconviction proceedings cannot be expected to understand the technical requirements of exhaustion and should not be denied the opportunity to exhaust a potentially meritorious claim simply because he lacked counsel.").

Under Rose, the declaration of petitioner's daughter, Deborah Munro, which details her familial and financial challenges in obtaining habeas counsel for her mother, does not in itself support a finding of good cause for the delay. Nor is good cause demonstrated by the declaration of petitioner's appointed appellate counsel, Deborah Hawkins, that her appointment did not extend to the filing of a writ of habeas corpus. See ECF No. 13-1 at 2. Petitioner's family retained current counsel on January 5, 2018. Although petitioner herself has not filed an affidavit explaining why she failed to earlier attempt to exhaust her new claims in the state courts, Ms. Hawkins, petitioner's appellate counsel, avers under penalty of perjury that petitioner "was never in any mental condition to file any form or pro per petition." ECF No. 13-1 at 2. Ms. Hawkins avers:

> During the time I represented Ms. Harris, who was over seventy years old, I was aware that she was mentally confused and unable to understand fully her legal circumstances. She exhibited confusion about her appeal and about the civil wrongful death proceedings against her. She was never in any mental condition to file any form or pro per petition.

Id. In the absence of any evidence to the contrary,[9] the court finds that Ms. Hawkin's sworn

[9] The court is not persuaded by respondent's reliance on petitioner's past "paralegal work" to demonstrate she was qualified to pursue collateral review without the assistance of counsel. See ECF No. 10 at 4. Although petitioner conceded she informed detectives that she had previously performed paralegal work, she testified, "I wasn't a real paralegal. I did some work, some typing and office work." ECF No. 10-2 at 10 (Rp. Ex. B).

declaration supports a reasonable inference that petitioner was unable to earlier pursue her claims on collateral review due to her "own ignorance or confusion about the law or the status of [her] case, or by circumstances over which [s]he had little or no control." Riner, 415 F. Supp. 2d at 1211; accord, Navas v. Baca, 606 Fed. Appx. 414, 415 (9th Cir. 2015) (good cause may be shown by petitioner's pro se and elderly status, together with serious questions regarding his mental competency).

The affidavit of petitioner's daughter, Deborah Munro, explains that her mother's petition was "filed at the last moment" because familial and financial challenges prevented her from previously retaining counsel.[10] See ECF No. 13-1 at 2. When petitioner's counsel was retained, he acted expeditiously by investigating, preparing and filing both the state and federal habeas petitions within one month. ECF No. 2 at 6. Counsel stresses that he filed the state petition before filing the federal petition to toll the remaining federal limitations period. However, counsel states that there remains only one day in the federal limitations period. See ECF No. 2 at 3, 6 ("petitioner needs a stay because [her] federal one-year statute will expire only 1 day after the state court rules on his pending petition"). Counsel contends that these factors, as well as petitioner's mental confusion, demonstrate good cause for granting a stay in this action, citing Leonardos v. Buddress, 2007 WL 1174825, at *4, 2007 U.S. Dist. LEXIS 32411, at *7-9 (N.D. Cal. Apr. 19, 2007).

In Leonardos, the district court granted the petitioner's stay request because, inter alia, petitioner had already filed his state petition and there remained only two days in the federal limitations period. Although the petitioner in Leonardos also had newly discovered evidence, the undersigned finds the following reasoning of that decision persuasive:

> Here, the state habeas petition was filed with two days left on the statute of limitations. A subsequent habeas petition before this Court will be time-barred if there is any short delay in notification from the California Supreme Court. Even with careful and diligent lawyering, a two-day window with notice from the state court notification system may not be enough time to file the federal

[10] Ms. Munro avers that, after several unsuccessful attempts to obtain other representation, current counsel "agreed to represent my mother under the shortest of timeframes . . . [and] agreed to do it for a reduced price." See ECF No. 13-1 at 2. Ms. Munro borrowed money against her retirement account to pay counsel's retainer and will pay further amounts in installments. Id.

> habeas petition. Leonardos supports his position with a case from this district granting a stay, finding good cause when there was only 12 days left on the statute of limitations to file a federal habeas petition after the state habeas petition was exhausted . . . .
>
> Leonardos also argues that the unexhausted claims have already been filed with the state court, which decreases the chance of delay and frustration of the goals of AEDPA to encourage the finality of state court judgements and for petitioners to litigate claims in state court first. This also weighs in favor of finding good cause.
>
> Denying a stay in this case will likely preclude federal review of Leonardos' unexhausted claims which are based on newly discovered evidence. Leonardos has also been diligent because he has already filed the state habeas corpus petition. Considering all of these factors, the Court concludes that Leonardos has shown good cause to grant the stay.

Leonardos, 2007 WL 1174825, at *3-4, 2007 U.S. Dist. LEXIS 32411, at *7-9 (citations omitted).

In the instant case, the undersigned finds that the nearly-expired federal limitations period, now protected by counsel's state filing, together with petitioner's advanced age and mental confusion, present "legitimate" and "reasonable" excuses, supported by "sufficient evidence," Blake, 745 F.3d at 982, for petitioner's delay in exhausting her new claims in the state courts. Therefore, the undersigned finds that petitioner has met the Rhines "good cause" requirement.

**3. Merit**

The Ninth Circuit has identified the following standards for assessing the potential merit of unexhausted claims in a Rhines motion:

> A federal habeas petitioner must establish that at least one of his unexhausted claims is not "plainly meritless" in order to obtain a stay under Rhines. 544 U.S. at 277. In determining whether a claim is "plainly meritless," principles of comity and federalism demand that the federal court refrain from ruling on the merits of the claim unless "it is perfectly clear that the petitioner has no hope of prevailing." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005). "A contrary rule would deprive state courts of the opportunity to address a colorable federal claim in the first instance and grant relief if they believe it is warranted." Id. (citing Rose v. Lundy, 455 U.S. 509, 515 (1982)).

Dixon, 847 F.3d at 722 (an unexhausted claim has "claim plausibility" if it is not "plainly meritless"). The undersigned has assessed the potential merit of petitioner's unexhausted claims based on a review of the petition, petitioner's motion to stay, respondent's opposition, and petitioner's reply, together with petitioner's habeas petition filed and currently pending in the El

Dorado County Superior Court. The following summary demonstrates that none of petitioner's unexhausted claims are "plainly meritless." Rhines, 544 U.S. at 277.

Claims Five through Eight allege the ineffective assistance of petitioner's trial counsel, David Weiner. Claims of ineffective assistance of counsel are examined under Strickland v. Washington, 466 U.S. 668 (1984). To prevail on a claim of ineffectiveness of counsel, petitioner must establish two factors. First, she must establish that counsel's performance was deficient, i.e., that it "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington v. Richter, 562 U.S. 86, 105 (2011) (citing Strickland, 466 U.S. at 690). Second, she must establish that she was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "The likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 112 (citing Strickland at 693).

- **Claim Five: Failure to Employ Defense Expert to Support Blood Splatter Theory**

Petitioner contends that trial counsel provided ineffective assistance by not engaging a blood splatter expert to support the defense theory that petitioner struggled with her husband before he was shot, and thus to refute the "expert" testimony of a deputy sheriff that the splatter pattern demonstrated decedent was asleep when shot, consistent with the prosecution's first degree murder theory. Respondent argues that petitioner has failed to include supporting facts (e.g. the declaration of blood splatter expert) demonstrating that petitioner was prejudiced. However, petitioner need not prove her ineffective assistance claim to obtain a stay, only to demonstrate that the claim is not "plainly meritless."

"Strickland . . . permits counsel to 'make a reasonable decision that makes particular investigations unnecessary'" including an "inquiry into the blood evidence." Harrington, 562 at 106 (quoting Strickland, 466 U.S. at 691). "Counsel [is] entitled to formulate a strategy that [is] reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." Harrington, 562 U.S. at 107. The subsequent assessment of such a decision based on

an ineffective assistance claim requires the court "to 'reconstruct the circumstances of counsel's challenged conduct' and 'evaluate the conduct from counsel's perspective at the time.'" Id. at 107 (quoting Strickland, 466 U.S. at 689).

Respondent does not dispute that petitioner's defense was premised on her testimony she struggled with her husband before an accidental shooting. As recounted by the Court of Appeal, "[petitioner's] defense to Harris's death was accident (without specifying who pulled the trigger). Regarding her defense of accident, defendant testified she and Harris were wrestling in the bedroom, he had a gun, she blacked out, and when she came to, Harris was dead." People v. Harris, 2016 WL 4434783, at *1, 2016 Cal. App. Unpub. LEXIS 6134, at *1. Given the central importance of this defense theory, this court is unable to assess whether trial counsel's failure to present a blood splatter expert was reasonable under the circumstances. However, clearly, the claim is not "plainly meritless."

- **Claim Six: Failure to Present Psychiatric Testimony re. Petitioner's Memory Loss**

Petitioner's counsel asserts that "[p]etitioner spent approximately 25 hours in psychiatric consultation to help her recover her memory. No psychiatric witness testified to explain her memory deficit although such witness was available." ECF No. 2-1 at 3. Counsel explains:

> Trial counsel put on the record that the psychiatrist who spent 25 hours with petitioner had had a stroke and could not undergo the stress of cross-examination by the prosecutor. For that reason there was no testimony about petitioner's mental problems at all. On the record the judge chastised defense counsel for not getting a substitute witness and said on the record, that if a request for continuance had been requested, the judge would have granted it. That failure to call a substitute expert is the second claim. It had an enough merit for the judge to worry about that failure on the record in this case, it should be enough to show the merit of the issue.

ECF No. 13 at 6. The prosecution relied on the absence of such testimony to imply that it would have been unhelpful to petitioner. As recounted by the Court of Appeal:

> The prosecutor argued that in looking at the defense case, "importantly, ... keep[ ] in mind, first that the People have the burden of proof. I have to prove my case beyond a reasonable doubt in order for you to vote to convict. [¶] But if the defense asserts or claims something in her defense, the defense team has the burden of production." The prosecutor explained that defendant claimed a "memory issue for traumatic events," noted that her

> psychologist Dr. Tressor was "not available as a witness to the defense because of a medical issue," "so I'm not going to ... mislead you and suggest that they could have called Dr. Tressor," "[b]ut there are many, many experts that they could call to evaluate the defendant and talk about this." "The law is clear that if the defense isn't prepared to go forward because they lost a witness, or they need to obtain a witness, the Court would grant that continuance. There was no motion to continue filed in this case by the defense" and "[i]f you can't afford an expert witness that you need in your defense, the Court will appoint one for you."

Respondent again asserts that petitioner has failed to demonstrate prejudice and argues that counsel's "informed choices" are "'virtually unchallengeable.'" ECF No. 10 at 5 (quoting Strickland, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). However, as with the prior claim, petitioner need not prove prejudice to obtain a stay, and this court does not have sufficient information to determine whether trial counsel's decision was reasonable under the circumstances. Like the prior claim, this claim is not "plainly meritless."

- **Claim Seven: Trial Counsel Contradicted Petitioner's Testimony**

Petitioner's counsel asserts that trial counsel "in argument told the jury that petitioner was conscious when the shot was fired which killed her husband but petitioner told the jury she had 'blacked out' and the jury was instructed on unconsciousness. Counsel essentially told the jury to disregard a defense which was established by petitioner's testimony and supported by the requested instructions of unconsciousness. There could have been no rational tactical purpose of counsel to contradict this testimony and destroy this defense. This was ineffectiveness of counsel." ECF No. 2-1.

Respondent asserts that petitioner's own testimony supports counsel's contradictory argument to the jury:

> Petitioner repeatedly would not affirm she was ever unconscious, as opposed to having the wind knocked out of her due to an impact to her chest. [] And she conceded she was "holding th[e] gun when [her husband] was killed." [] Literally nothing is cited to show that counsel's choice as to argument was uninformed. And virtually unchallengeable province as to strategic choices does include the province to decide what calculated risks to take in argument, even at the risk of saying something adverse about a defendant. Yaborough v. Gentry, 540 U.S. 1, 9 (2003).

ECF No. 10 at 5. In Yaborough, the Supreme Court found that "[t]he issues counsel omitted were not so clearly more persuasive than those he discussed that their omission can only be attributed to a professional error of constitutional magnitude. 540 U.S. at 9. The Court reasoned that "[t]his is precisely the sort of calculated risk that lies at the heart of an advocate's discretion." Id.

In the present case, while review of all petitioner's testimony at trial may support a finding that her counsel's challenged statements in closing were reasonable under the circumstances, it is equally plausible that such review may instead demonstrate that counsel's statements were both unreasonable and prejudicial. Therefore, this claim is not "plainly meritless."

- **Claim Eight: Trial Counsel Was Ineffective in Continuing to Represent Petitioner Despite his Conflicts and Should Not Have Accepted Petitioner's Waiver**

This claim, and the next, is premised on defense counsel's conflicts in representing petitioner. Trial counsel, David Weiner, previously represented petitioner when she was prosecuted for, and acquitted of, the shooting death of her former husband (Batten) nearly three decades before. See People v. Harris, 2016 WL 4434783, at *3, 2016 Cal. App. Unpub. LEXIS 6134, at *8. Before that, Weiner represented Batten when he was charged with molesting petitioner's daughter. See ECF No. 10-2 at 10. Petitioner called Weiner after the death of her husband (Harris); it was Wiener who placed the 911 call.[11] The prosecutor argued in the instant case that petitioner and Weiner colluded to fabricate petitioner's defense in both the Batten and Harris trials, and drew numerous parallels between the cases. See ECF No. 1 at 38.

Prior to trial, the prosecution moved for an inquiry into the potential conflict of interest between petitioner and Weiner, "on the ground that Mr. Weiner was a potential prosecution witness[12] against petitioner on the issue of credibility." ECF No. 1 at 15. A hearing was

---

[11] See People v. Harris, 2016 WL 4434783, at *1, 2016 Cal. App. Unpub. LEXIS 6134, at *2 ("At 6:05 p.m. on January 6, 2013, attorney David Weiner (trial counsel) called 911 to report there had been a homicide on Wilderness Court in Placerville. Trial counsel knew about Harris's death because defendant had called him to report it, and trial counsel had just met with defendant in his car outside the Placerville house, and the two talked in person[.]").

[12] It is not clear from the current briefing whether Mr. Weiner actually testified at petitioner's trial.

convened, at which petitioner was represented by independent counsel; petitioner chose to waive the conflict in writing. Id. The prosecution later moved to recuse Weiner as petitioner's counsel. Petitioner was again represented by independent counsel, and executed a second waiver, although independent counsel declined to join in the waiver. Id. at 15-6. Thereafter, the trial judge issued a written order denying the motion to recuse Weiner. Id. at 16.

Petitioner's counsel now contends:

> It was obvious that counsel could not represent petitioner and be a witness for her defense too. Yet he was. The presumption of prejudice was never rebutted. The prosecutor continually linked defense counsel to the crime shortly after it happened because indeed Mr. Weiner was actually involved with the crime details before the police even arrived. Mr. Weiner was a witness in the case he was defending. An impossible and conflicted situation. That is why the independent counsel did not concur in petitioner's waiver of the conflict. . . .
>
> Independent counsel said Mr. Weiner had a conflict and could not represent petitioner. The prosecution agreed, asserting in a written motion the same, namely Mr. Weiner was a witness in the case and was conflicted and should not be allowed to represent petitioner. The waiver of this conflict by this mentally disturbed woman should not have occurred and the judge should not have approved it. [¶] Independent counsel is now a superior court judge. He will testify in person or by declaration why he recommended that Mr. Weiner should not have represented petitioner. The merit of this issue is obvious in just reciting it.

ECF No. 2-1 at 3-4, ECF No. 13 at 6-7. Respondent contends only that a criminal defendant may waive the "most basic" of rights (citing Peretz v. United States, 501 U.S. 923, 936 (1991)), which includes electing to "accept such risk of conflict as may exist" (citing Cuyler v. Sullivan, 446 U.S. 335, 347 (1980)).

"An attorney who attempts to be both advocate and witness impairs his credibility as witness and diminishes his effectiveness as advocate." Comden v. Superior Court (1978) 20 Cal. 3d 906, 912. "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler, 446 U.S. at 348. "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." Id. at 349-50.

Here, with the advantage of hindsight and assistance of habeas counsel, petitioner will be accorded the opportunity to investigate whether her trial counsel's acknowledged conflicts of interest adversely affected counsel's performance and, if so, to demonstrate such adversity on collateral review. This claim is not "plainly meritless."

- **Claim Nine: The Trial Judge Erred in Accepting Petitioner's Waiver of Conflict**

Petitioner contends that the trial judge's acceptance of petitioner's waiver was in error, violating petitioner's Sixth Amendment right to counsel. It is respondent's position that petitioner accepted the risks of her counsel's conflicts and should be required to abide by her waiver of those risks.

"[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. 153, 159 (1988). The trial court "must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Id. at 163 (representation of co-conspirators). "Inherent in the question whether a trial court may disqualify a criminal defense attorney over the defendant's objection is the conflict between the defendant's preference to be represented by that attorney and the court's interest in 'ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" People v. Jones (2004) 33 Cal. 4th 234, 240 (quoting Wheat, 486 U.S. at 160) (addressing criminal defendant's right to counsel under both the federal and California constitutions). "A trial court's authority to disqualify an attorney derives from the power inherent in every court to control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." Jones, 33 Cal. 4th at 583 (citations and internal quotation marks omitted).

Petitioner contends that "[h]ere the trial judge had to know the prosecution would tell the

jury that defense counsel was in league with the petitioner because of his status in the 1985 case and his involvement in this case. And the prosecutor did exactly that." ECF No. 10-1 at 9. In light of trial counsel's demonstrated conflicts, and the prosecutor's predictable reliance thereon, the claim that trial judge's acceptance of petitioner's waivers denied her effective assistance of counsel and a fair trial is not "plainly meritless."

- **Claim Ten: Cumulative Error Denied Petitioner a Fair Trial**

The combined effect of multiple trial court errors violates due process when it renders the resulting criminal trial fundamentally unfair. Chambers v. Mississippi, 410 U.S. 284, 298 (1973). The cumulative effect of multiple errors can violate due process even when no single error rises to the level of a constitutional violation. Id. at 290 n.3. Petitioner contends that if she does not exhaust this claim, "it is lost forever. Competent counsel, faced with these habeas corpus issues *must* raise this cumulative error claim." ECF No. 13 at 7 (original emphasis). The undersigned agrees, based on the preceding review of petitioner's new claims, and finds that this claim too is not "plainly meritless."

**4. Delay**

Finally, the Supreme Court has cautioned that "if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all." Rhines, 544 U.S. at 278. This court must therefore consider whether petitioner engaged in abusive litigation tactics or intentional delay before filing her state petition for collateral review and the instant federal petition.

Respondent contends that petitioner's failure to file her own declaration explaining what steps she took to pursue her claims before retaining current counsel supports a reasonable inference that the pertinent facts are unfavorable to her. ECF No. 10 at 6. In response, petitioner's counsel filed the declarations of petitioner's daughter and petitioner's appointed appellate counsel, and recounts his own diligence after being retained on January 5, 2018.

Petitioner's counsel persuasively contends that, in contrast to the petitioner in Rhines, petitioner herein is serving a non-capital sentence and therefore has had no incentive to intentionally delay collateral challenges to her conviction and sentence with which she

strenuously disagrees. See ECF No. 2 at 5. Nor is there any evidence of intentional delay or abusive litigation tactics by petitioner or her agents. Petitioner's inability to earlier retain counsel or pursue collateral relief on her own is adequately documented by the affidavits of her daughter and appellate counsel. Petitioner's current counsel avers that he acted expeditiously upon being retained: "Within one month, counsel conducted the investigation and prepared and filed both state and federal habeas petitions." Id. at 6. For these reasons, notwithstanding the failure of petitioner to file her own affidavit, the court finds no evidence or reasonable inference that petitioner has engaged in intentional delay or abusive litigation tactics.

**C. Summary**

For the reasons explained above, the undersigned finds that petitioner has demonstrated good cause for her failure to previously exhaust her unexhausted claims; that those claims are colorable; and that petitioner has not engaged in intentionally dilatory litigation tactics. Accordingly, a stay is appropriate. Rhines, 544 U.S. at 277-78. The undersigned will recommend that petitioner's motion be granted.

**IV. Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's motion to stay and abey this action under Rhines v. Weber, 544 U.S. 269 (2005), ECF No. 2, be GRANTED;

2. Petitioner be directed to file in this court, within thirty days after the filing date of the California Supreme Court's final order resolving petitioner's unexhausted claims, a motion to lift the stay and a motion to file an amended petition for writ of habeas corpus, together with a proposed First Amended Petition; and

3. The Clerk of the Court be directed to administratively close this case for the duration of the stay.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court. Such document should be captioned "Objections to Magistrate Judge's

Findings and Recommendations." Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 9, 2018

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE